## COLGLAZIER v. SOUTHERN PAC. CO.

Circuit Court of Appeals, Ninth Circuit.
October 28, 1929.

No. 5767.

Alexander Murry and George O. Hilzinger, both of Tucson, Ariz., for appellant.

Francis M. Hartman, of Tucson, Ariz., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. By an Arizona statute (paragraph 3724, Rev. St. [Civ. Code 1913]) it is made "unlawful for any common carrier to receive any live stock for transportation until and unless the same shall have been inspected * * * and until such common carrier shall have been furnished with a certificate by a duly authorized inspector, showing that the health, brands and earmarks of such live stock have been duly inspected as required by law. Any common carrier, or any officer, agent or servant thereof, who shall violate the provisions of this section shall be deemed guilty of a misdemeanor," etc.

In the nighttime on or about February 11, 1926, at a siding in Arizona known as Miramonte Station, where appellee, defendant below, maintained a yard for stock-loading purposes but no agent or station building, one Melvin Smith tendered to it for transportation to Los Angeles approximately 200 head of cattle, and furnished what appeared to be the requisite statutory certificates of inspection in regular form and purporting to bear the signature of one W. A. Glenn, who was the state officer duly authorized to make and certify such inspection. Defendant's train conductors, not suspecting any irregularity, accepted the certificates, loaded the cattle, and in due course carried them to Los Angeles. It turned out that the stock had been stolen from appellant and his assignors by Smith and confederates, and there was evidence tending to show that, though upon regular official forms, the certificates were forgeries. Before the cattle left the possession of the defendant, plaintiff and the other owners learned of the thefts and sent an agent to Los Angeles, where, pursuant to an arrangement agreed upon between

him and the defendant, sales were made of the stock at the best prices obtainable, and, after paying the defendant's freight and other charges, the agent turned over the balance so realized to the owners. Upon the theory that because the certificates of inspection were not genuine the defendant was liable for such losses as the owners sustained as a result of the transportation of the cattle from Arizona to Los Angeles, plaintiff brought this suit for damages upon his own claim and on the claims of the other two owners which he had taken by assignment. The court below directed a verdict for the defendant, and, from the judgment entered thereon, plaintiff appeals.

Manifestly from the beginning the theory of the appellant has been that the duty imposed upon carriers is not only absolute and unqualified, but that any failure to comply with the literal terms of the statute is not merely evidence of negligence, but constitutes an actionable wrong, or negligence per se. In his complaint there is no averment or intimation that, in accepting the certificates which were in due form and apparently genuine, defendant's agents acted negligently, or that by the exercise of reasonable care they could and should have discovered the alleged fraud. Nor is there a suggestion of actual negligence in the evidence. Indeed in respect to the authenticity of the certificate plaintiff was content to show only by handwriting experts that the inspector's name attached thereto was not in his own hand, and, when defendant offered evidence tending to show that more or less commonly the inspector, whether lawfully or not, delegated to others, and particularly to one of the persons apparently implicated in the theft, the duty and authority to make inspections and execute certificates in his name, plaintiff successfully objected.

Upon analyzing the statute, it will be noted that, if it is read literally, the carrier is not protected by a certificate even though authentic and in due form, for it is declared to be unlawful for a carrier to receive stock for transportation "until and unless the same shall have been inspected," *and* the prescribed certificate has been furnished. In short, under the theory which plaintiff puts forward, he could have admitted the authenticity of the certificates and their due form, and obtained the same footing in law which he now has, by alleging and proving that in fact Glenn had made no inspection such as the statute requires and such as he falsely certified. In the absence of a ruling to that effect by the Supreme Court of the state, we are not disposed to put such a construction upon the statute, under which it would be well-nigh impossible for the carrier to escape the hazard of criminal punishment and under which it would always incur the peril of a claim for damages either on the part of the owners of stock, as here, or on the part of honest shippers whose tendered shipments are delayed while the carrier makes an exhaustive investigation to determine whether the inspection statute has been fully complied with. Upon the question whether one who, having used reasonable care, in good faith mistakenly performs an act which turns out to be within the inhibition of a statute like this, if read literally, is chargeable with wrongdoing, there is some diversity in the decisions. An illuminating discussion may be found in the first volume of Bishop on Criminal Law (9th Ed.), beginning with section 303, and particularly in the footnote beginning on page 206. And see, also, Holy Trinity Church v. United States, 143 U. S. 457, 458, 12 S. Ct. 511, 36 S. Ct. 226; Standard Oil Co. v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734.

Considering the extraordinary consequences of accepting a literal reading of the statute here and the extreme doubt of its constitutionality if so read, we are of the opinion that the Legislature contemplated that the language would be construed in the light of fundamental legal principles which it was not thought necessary expressly to define, and that hence, if the defendant in good faith and without carelessness accepted the certificates in the belief that they were authentic and that the facts were as certified, it cannot be charged with wrongdoing.

While, in respect to the major portion of each claim sued upon, we are therefore of the opinion the plaintiff is not entitled to recover, a different view must be taken touching the minor portion. Each cause of action includes, as a part of the damages claimed, payment exacted by defendant for freight and other charges. It appearing that the stock had been stolen and shipped without authority of the owners, undoubtedly, we think, the owners had a right to recover their possession wherever found, and, in case the defendant declined upon demand and proof of ownership to yield possession, they could have successfully maintained an action in replevin. A lien in favor of a carrier for transportation charges presupposes a contract for carriage binding upon the owner.

The judgment is therefore reversed upon this ground alone, with directions to grant

a new trial limited to the issues covering payments alleged to have been exacted by and involuntarily paid to defendant by the plaintiff and his assignors in order to regain possession of the cattle.

Reversed in part.